J-S10024-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ERIC WHITERS | : | |
| | : | |
| Appellant | : | No. 842 EDA 2022 |

Appeal from the PCRA Order Entered March 10, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0007204-2008

BEFORE: PANELLA, P.J., LAZARUS, J., and STABILE, J.

MEMORANDUM BY LAZARUS, J.: **FILED APRIL 18, 2023**

Eric Whiters appeals from the order, entered in the Court of Common Pleas of Philadelphia County, dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. Upon careful review, we affirm.

The PCRA court set forth the factual and procedural history of this case as follows:

> On May 4, 2008, Officer Edgar Ruth (hereinafter "Officer Ruth")[,] of the City of Philadelphia Police Department[,] was traveling with his partner[,] Officer Paul Tinneny (hereinafter "Officer Tinneny")[,] in a police car when a call came from officers requesting more units because there was a large crowd and a disturbance in a bar/night club in the 5300 block of Market Street. Upon arriving at 53rd Street, the officers witnessed approximately one hundred people on the street. A woman in the crowd to Officer Ruth's left pointed down the street and yelled, "They got guns, [t]hey got guns[.]" The woman pointed to a tan Cadillac. According to Officer Ruth, the Cadillac "spun its wheels and took off through the crowd westbound." Officer Ruth followed the

Cadillac and caught up to it on Yewdall Street when the Cadillac was boxed in by parked cars and forced to stop.

Officer Ruth got out of his car and approached the Cadillac. He noticed that the windows were tinted and "yelled to put the windows down." Initially, Officer Ruth believed that there were two people in the car, both in the front seat. Officer Ruth saw the driver reaching for the glove box. Officer Ruth instructed the driver to put the car in park and show his hands. When Officer Ruth went around the rear of the car, he could see through the tint and noticed a passenger in the backseat. The passenger was later revealed to be [Whiters]. When Officer Ruth opened the door, he observed a firearm, a black Kel-Tec .40 caliber, on the floor of the Cadillac under [Whiters'] feet. He also noticed an odor of marijuana. Officer Ruth took [Whiters] out of the Cadillac and placed him in Officer Ruth's vehicle.

[Whiters] was charged with possession of a firearm by a prohibited person. [*See* 18 Pa.C.S.A. § 6105.] The trial court held a hearing on a [Pa.R.Crim.P.] 600 claim on October 28, 2009[,] and it was denied. On March 26, 2010, [Whiters] moved to suppress evidence on the basis that he was arrested without an arrest warrant and without probable cause and that at the time of the arrest, he may have made statements to the police [that] were the fruits of the illegal arrest and were given prior to the police issuing *Miranda* warnings. On August 14, 2013, the trial court heard the motion to suppress at which Officer Ruth recounted the circumstances that led him to arrest [Whiters]. The trial court denied the motion to suppress.

The trial court conducted a jury trial on October 1-2, 2014[,] at which Officer Ruth reiterated his testimony from the motion to suppress hearing and identified the firearm that was found in the Cadillac under [Whiters'] feet. Officer Ruth demonstrated how the firearm was positioned under [Whiters'] feet when he first saw it.

At the trial, Officer Tinneny corroborated Officer Ruth's testimony. Kenneth James Lay, a civilian supervisor in the laboratory of the Philadelphia Police Department's Firearms Identification Unit, identified a report previously prepared by his office concerning the firearm found in the Cadillac and testified concerning his more recent examination of the firearm. The jury found [Whiters] guilty of possession of a firearm by a prohibited person[,] after which the trial court sentenced [Whiters] to a term of five to ten years['] imprisonment.

PCRA Court Opinion, 8/11/22, at 2-3.

Whiters filed post-sentence motions, which the trial court denied on December 12, 2014. Whiters filed a timely notice of appeal to this Court, which affirmed his judgment of sentence on July 11, 2016. *See Commonwealth v. Whiters*, 154 A.3d 849 (Pa. Super. 2016) (Table). Whiters' petition for allowance of appeal to the Supreme Court was denied on February 6, 2019. *See Commonwealth v. Whiters*, 201 A.3d 727 (Pa. 2019) (Table).

On September 17, 2019, Whiters filed a *pro se* PCRA petition. The PCRA court appointed counsel, who filed an amended petition. On June 21, 2021, the Commonwealth filed a motion to dismiss. Whiters filed a counseled "Supplement [sic] Amended Petition Under Post-Conviction Relief Act" on August 23, 2021. On February 15, 2022, the PCRA court issued its Pa.R.Crim.P. 907 notice of intent to dismiss and, on March 10, 2022, the PCRA court denied relief. Whiters filed a timely notice of appeal, followed by a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

Whiters raises the following claims for our review:

1. Whether the court erred in not granting relief on the PCRA petition alleging [t]rial [c]ounsel was ineffective.

2. Whether the [c]ourt erred in denying [Whiters'] PCRA petition without an evidentiary hearing on the issues raised in the amended PCRA petition.

Brief of Appellant, at 7 (reordered for ease of disposition).

In reviewing the denial of PCRA relief, "we examine whether the PCRA court's determination is supported by the record and free of legal error." **Commonwealth v. Fears**, 86 A.3d 795, 803 (Pa. 2014) (quotations and citations omitted). The PCRA court's credibility determinations are binding on this Court when they are supported by the record; its legal conclusions, however, are subject to de novo review. **Commonwealth v. Chmiel**, 30 A.3d 1111, 1127 (Pa. 2011).

Here, Whiters claims that his trial counsel was ineffective. To establish a claim of counsel's ineffectiveness, a petitioner must overcome the presumption that counsel was effective by proving "(1) that the underlying claim has merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors or omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." **Commonwealth v. Ousley**, 21 A.3d 1238, 1244 (Pa. Super. 2011) (citation omitted). "The failure to prove any one of the three prongs results in the failure of petitioner's claim." **Id.**

Whiters first asserts that trial counsel rendered ineffective assistance by failing to preclude the Commonwealth from mentioning before the jury his prior conviction for third-degree murder, which was the predicate offense disqualifying him from possessing a firearm under section 6105. Specifically, Whiters claims that, rather than allowing the Commonwealth to reference his prior murder conviction to the jury, counsel should have "filed a motion in limine to preclude mention of murder . . . or should have only entered into a

stipulation that [Whiters] had a prior conviction for an [enumerated] offense."[1] Brief of Appellant, at 15 (unnecessary capitalization omitted). Whiters alleges that, "[i]f trial counsel [had] not been ineffective, counsel for the Commonwealth would have stated to the jury that [Whiters] was convicted of one of the offenses without revealing to the jury which offense" was involved. *Id.* at 16. Whiters claims that the mention of his specific prior conviction prejudiced him. This claim is meritless.

We begin by noting that Whiters provides no citation to authority in support of this claim, in violation of Pa.R.A.P. 2119(a).[2] This omission is, perhaps, attributable to the fact that controlling authority is in direct contravention to his claim. In *Commonwealth v. Jemison*, 98 A.3d 1254 (Pa. 2014), our Supreme Court addressed, on direct appeal, a claim nearly identical to that underlying Whiters' ineffectiveness claim. There, the appellant, also convicted under section 6105, argued that the Commonwealth should "no longer be permitted to introduce the record of the disqualifying criminal conviction when the defendant is willing to stipulate that he is within the class of persons prohibited from possessing firearms." *Id.* at 1257.

---

[1] Rather than convincing the Commonwealth to enter into a non-specific stipulation that Whiters had a conviction for "an enumerated offense," trial counsel stipulated that Whiters had been convicted of third-degree murder.

[2] "The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part . . . the particular point treated therein, **followed by such discussion and citation to authorities as are deemed pertinent**." Pa.R.A.P. 2119(a) (emphasis added).

In rejecting the appellant's claim, the Court found:

Our General Assembly took considerable care to delineate the specific offenses that can support a conviction . . . under [section] 6105, and there is no question that the relevant specific enumerated offense is an essential element of that crime. Given the text of the Pennsylvania statute, we cannot conclude . . . that the name of the prior offense . . . addressed no detail in the definition of the prior-conviction element that would not have been covered by the stipulation to an unspecified conviction.

*Id.* at 1261 (citation and quotation marks omitted). The Court further stated:

**We are unable to conclude that, in a [section] 6105 . . . case, a defendant suffers unfair prejudice merely by the admission into evidence of his or her certified conviction of a specific, identified, predicate offense, which has been offered by the Commonwealth to prove the prior conviction element of [section] 6105.**

Any possibility of unfair prejudice is greatly mitigated by the use of proper cautionary instructions to the jury, directing them to consider the defendant's prior offense only as evidence to establish the prior conviction element of the [section] 6105 charge, not as evidence of the defendant's bad character or propensity to commit crime. . . . We reiterate that here, as in so many other contexts, the jury is presumed to follow the court's instructions. *See, e.g.*, *Commonwealth v. Tedford*, [] 960 A.2d 1, 37 ([Pa.] 2008) (recognizing that when evidence of a defendant's other crimes is admitted for a relevant purpose under Rule 404(b), the defendant is entitled upon request to a limiting jury instruction, which the law presumes the jury will follow).

*Id.* at 1262–63 (emphasis added).

Here, the trial court gave the jury the following instruction:

In this case, you have heard evidence that[,] in the past[,] the defendant was convicted of the crime of third-degree murder. This evidence is before you for a limited purpose only, and that is to provide you with information which is an element of the crime charged in this case, that crime being possession of a firearm by

a prohibited person. I will explain all of the elements when we reach that point in my instructions.

You must not consider this evidence of his prior conviction for third-degree murder in any way other than for the purpose I have just stated. You must not regard this evidence as tending to show that the defendant is a person of bad character or criminal tendencies from which you might be inclined to infer guilt in this case.

N.T. Trial, 10/2/14, at 175-76.

In light of the foregoing, Whiters has not demonstrated that his underlying claim is meritorious. ***Ousley***, ***supra***. Accordingly, he is entitled to no relief.

Next, Whiters claims that trial counsel was ineffective for failing to "properly present all the necessary facts regarding [the Commonwealth's Rule] 600 violation." Brief of Appellant, at 19. Whiters argues that, during the Rule 600 hearing, counsel for the Commonwealth misstated the period during which Whiters was without an attorney. Whiters asserts that trial counsel "never objected to this misstatement of the facts." ***Id.*** at 20. Whiters further argues:

Additionally, the Commonwealth failed to file writs to have [Whiters] brought down during that time period. And the few that were filed were incorrect. They were filed in someone else's name and sent to another facility. So[,] during that time frame, [Whiters] was never bought down [due] to the Commonwealth's errors. Trial counsel never argued this.

The prosecutor then advised the court that [Whiters] was brought down but that no courtrooms were available.

To compound the error, on each of the dates there was no writ filed, the defense counsel requested continuances rather than let the Commonwealth take the blame for the continuance.

*Id.* Lastly, Whiters argues that a mix-up in courtrooms caused additional delay. Whiters is entitled to no relief.

A Rule 600 motion requires the Commonwealth to establish that it exercised due diligence in bringing a defendant to trial. ***See Commonwealth v. Colon***, 87 A.3d 352, 359 (Pa. Super. 2014) (noting "failure of the Commonwealth to commence trial within 365 days from the filing of the complaint constitutes a technical Rule 600 violation[, and] the Commonwealth has the burden of demonstrating by a preponderance of the evidence that it exercised due diligence"). Here, however, Whiters—on collateral review—attempts to demonstrate that trial counsel was ineffective for failing to properly pursue a Rule 600 claim. In this context, Whiters bears both the burden of demonstrating that there was arguable merit to the proposed motion and that he was prejudiced by trial counsel's failure to pursue it. ***See Commonwealth v. Natividad***, 938 A.2d 310, 322 (Pa. 2007) ("A PCRA petitioner must exhibit a concerted effort to develop his ineffectiveness claim and may not rely on boilerplate allegations of ineffectiveness.").

Here, aside from pointing out a minor misstatement by counsel for the Commonwealth regarding the period of time Whiters was without counsel (amounting to a discrepancy of only 29 days), baldly alleging that "the Commonwealth failed to file writs to have [Whiters] brought down,"[3] and citing

_____

[3] The Commonwealth notes in its brief that there were 279 days between when Whiters was tried and the final adjusted run date, and that there were three

*(Footnote Continued Next Page)*

- 8 -

a mix-up in courtrooms (which Whiters does not argue was attributable to the Commonwealth[4]), Whiters fails to state the precise reasons he believes, but for trial counsel's ineffectiveness, his Rule 600 motion would have been meritorious. Whiters has not alleged that the Commonwealth failed to exercise due diligence, nor does he engage in any kind of Rule 600 analysis detailing specific periods of time he believes should be—but were not— attributed to the Commonwealth. Accordingly, Whiters failed to demonstrate even arguable merit to the claim underlying his allegation of ineffective assistance. **See Commonwealth v. Chmiel**, 889 A.2d 501, 540 (Pa. 2005) ("The burden of proving ineffectiveness rests with Appellant."). He is, therefore, entitled to no relief.

Finally, Whiters claims that the PCRA court erred in denying his petition without a hearing. A PCRA petitioner is not entitled to an evidentiary hearing as a matter of right. **Commonwealth v. Postie**, 200 A.3d 1015, 1022 (Pa. Super. 2018). The PCRA court may forgo a hearing if there is no genuine issue concerning any material fact, the petitioner is not entitled to PCRA relief, and no purpose would be served by further proceedings. Pa.R.Crim.P. 907(1);

_____

occasions in which a writ was prepared and defendant was not brought down, causing a total delay of 236 days. Thus, the Commonwealth asserts, even if the Commonwealth had incorrectly prepared all these writs, Whiters was still timely tried. **See** Brief of Commonwealth, at 17.

[4] **See Commonwealth v. Harth**, 252 A.3d 600, 618 (Pa. 2021) (delay attributable to court may be excludable from Rule 600 calculation where Commonwealth meets burden of proving due diligence)

***Postie***, 200 A.3d at 1022. To be entitled to an evidentiary hearing, defendant must offer to prove sufficient facts upon which a reviewing court can conclude that trial counsel may have been ineffective. ***Commonwealth v. Priovolos***, 715 A.2d 420, 422 (Pa. Super. 1998).

As detailed above, Whiters articulated no genuine issue of material fact that would warrant an evidentiary hearing on either of his ineffectiveness claims. Accordingly, the PCRA court did not err in dismissing his petition without a hearing.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/18/2023

- 10 -